**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **HARTFORD ACCIDENT AND INDEMNITY CO.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No. 20 C 1415** |
| ) | |
| **ZHEN FENG LIN and LI CHEN,** ) | |
| ) | |
| **Defendants.** ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

MATTHEW F. KENNELLY, District Judge:

Hartford Accident and Indemnity Co. has filed suit against Zhen Feng Lin and Li

Chen seeking a declaratory judgment regarding the extent of its liability to Lin and Chen

under an insurance policy that Hartford Accident issued to Lin's employer Win Win

Seafood Wholesale, LLC relating to a May 2017 traffic collision in which Lin was

seriously injured. Hartford has moved for summary judgment on its claims and has

moved to dismiss the defendants' counterclaim and strike their affirmative defenses.

One question in the Court's mind is how best to refer to the defendants. Hartford

Accident calls them Zhen and Li. However, the defendants' own counsel refers to them

as Lin and Chen, so the Court will do the same.

The parties' dispute concerns the "underinsured motorists" coverage provided by

the Hartford Accident insurance policy. The limit of that coverage is $1,000,000 per

accident. *See* Pl.'s Ex. A, sub-ex. 1 (insurance policy), Form HA 00 25 06 15 at 4. The

pertinent policy terms read as follows:

**D.    Limit Of Insurance**

1.    Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the Limit Of Insurance for Underinsured Motorists Coverage shown in this endorsement.

2.    Except in the event of a "settlement agreement", the Limit of Insurance for this coverage shall be reduced by all sums paid or payable:

   a.    By or for anyone who is legally responsible, including all sums paid under this Coverage Form's Covered Autos Liability Coverage.

   b.    Under any workers' compensation, disability benefits or similar law.  However, the Limit of Insurance for this coverage shall not be reduced by any sums paid or payable under Social Security disability benefits.

   c.    Under any automobile medical payments coverage.

3.    In the event of a "settlement agreement", the maximum Limit of Insurance for this coverage shall be the amount by which the Limit of Insurance for this coverage exceeds the limits of bodily injury liability bonds or policies applicable to the owner or operators of the "underinsured motor vehicle".

4.    No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Liability Coverage form.

. . .

**F.    Additional Definitions**

As used in this endorsement:

. . .

3.    "Settlement agreement" means we and an "insured" agree that the "insured" is legally entitled to recover, from the owner or operator of the "underinsured motor vehicle", damages for "bodily injury" and, without arbitration, agree

2

> also as to the amount of damages. Such agreement is final and binding regardless of any subsequent judgment or settlement reached by the "insured" with the owner or operators of the "underinsured motor vehicle".

*Id.*, Form CA 21 38 10 13 at 2-4.

Another term of the underinsured motorist coverage states as follows:

**Arbitration**

**a.** If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "underinsured motor vehicle" or do not agree as to the amount of damages that are recoverable by that "insured", then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. Either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

*Id.* at 4.

Following the collision, Lin and Chen took action to recover for their injuries in three ways. They sued Katherine Chickey, the driver whose negligence allegedly caused the collision, along with other defendants. In addition, Lin filed a workers' compensation claim. And finally, Lin and Chen made a demand for coverage under the underinsured motorist coverage in the Hartford Accident policy. *See* Pl.'s Ex. A, sub-ex. 4.

In the lawsuit against Chickey, the tortfeasor, Lin sued to recover for his injuries from the accident, and Chen, who is married to Lin, sued for loss of consortium. Lin and Chen accepted an offer from Chickey's liability insurance carrier to pay $100,000—the limit of coverage under Chickey's insurance—to settle the lawsuit. Defs.' Ex. 1 (Lange

Affid.) ¶¶ 9, 16. Other defendants in the lawsuit paid another $100,000. *Id.* ¶ 19. Half of these amounts were allocated to Lin, and half were allocated to Chen. *Id.*

As indicated, Lin also made a claim for workers' compensation benefits. Hartford Fire Insurance Company, which is affiliated with Hartford Accident, was the workers' compensation insurer for Lin's employer. The workers' compensation claim was also ultimately settled. On the surface of the parties' Local Rule 56.1 statements, there appears to be a significant dispute about the amount paid by Hartford Fire, but it largely melts away upon consultation of the underlying documents. Hartford Accident has submitted records, the accuracy of which Lin and Chen do not dispute, that reflect that Hartford Fire paid $64,549.24 in medical benefits and $61,710.66 in "indemnity" benefits, for a total of $126,259.90, *see* Pl.'s Ex. H, sub-ex. 2, and that it also paid a lump sum settlement in the amount of $175,000, *see id.*, sub-ex. 3. *See also* Defs.' LR 56.1 Stat. ¶ 8. Of the $175,000, $35,000 was paid to Lin's counsel for attorney's fees, and $165 went for the cost of medical records. *See* Pl.'s Ex. H, sub-ex. 3; Defs.' LR 56.1 Stat. ¶ 8. But those amounts were unquestionably for the benefit of Lin: the fees were paid to his lawyer out of his recovery, pursuant to whatever contract he had with the lawyer.

Based on these records, the total amount paid to or for the benefit of Lin on account of workers' compensation was $175,000 plus $126,259.90, a total of $301,259.90. Hartford Accident uses a larger figure in its brief ($303,106.11), but that seems to result from a discrepancy between the amount listed in an affidavit provided by Hartford Accident that purports to summarize the amounts paid by the workers' compensation insurance carrier and the actual amounts supported by the

accompanying documentation.  Specifically, Hartford Accident's affiant says that medical benefits totaling $66,395.45 were paid, citing page 7 of sub-exhibit 2, but that page actually lists a total for medical of $64,549.24, a figure repeated in the overall total on that same document, at page 11.  The Court will adopt the figure more favorable to Lin, that is, the lower figure supported by Hartford Accident's documentation ($301,259.90) rather than the insufficiently supported larger figure stated in its affidavit.

Lin paid $73,320.72 to Hartford Fire, the workers' compensation insurer, in return for a release of the lien it had asserted on settlement proceeds for injuries sustained in the collision.  These funds presumably came from the settlement of the personal injury case.  The characterization of Hartford's release is disputed by the parties, but here is what the release said:

CLAIMANT:  ZHEN FENG LIN
INSURER:   THE HARTFORD
EMPLOYER:  WIN WIN SEAFOOD WHOLESALE
CLAIM NO.   Y64C 68228
DATE OF INJURY: MAY 24, 2017

**RELEASE OF LIEN**

  FOR AND IN CONSIDERATION OF SEVENTY-THREE THOUSAND THREE HUNDRED TWENTY AND 72/100 ($73,320.72) and other good valuable consideration, the receipt of which is hereby acknowledged, THE HARTFORD hereby releases its lien against any settlement proceeds received for injuries sustained on the above date of injury.

  IN WITNESS WHEREOF, I have hereunto set my hand and seal this 27th day of March, 2019.

          THE HARTFORD:
          / (signature)
          Signed by:  Lynda K. Gillespie
          Title:  Subrogation Specialist

SINSON LAW GROUP
Attorneys for Plaintiff
20 North Wacker Drive, Suite 1010
Chicago, Illinois 60606
(312) 332-2107

Pl.'s Ex. H, sub-ex. 5.

Following their acceptance of the settlement from Chickey's insurer, Lin and

Chen issued a demand to Hartford Accident for payment of $900,000 under the underinsured motorist coverage. Pl.'s LR 56.1 Stat., Ex. A, sub-ex. 2 (letter of July 11, 2019). The $900,000 demand conceded a reduction of the coverage limits based on the $100,000 paid by Chickey's insurer. *Id.*

Back in 2017, in conjunction with Lin and Chen's initial demand for payment under the underinsured motorist coverage, Lin and Chen demanded arbitration under the above-quoted terms of the policy and named an arbitrator. *See id.*, sub-ex. 4 (letter of June 7, 2017). Hartford responded by stating that "the matter is not ripe for arbitration," but it also named an arbitrator. *See id.*, sub-ex. 5 (letter of July 7, 2017). It does not appear that any further action has been taken to pursue the arbitration, aside from an effort by Lin and Chen in the present case to expand the arbitration to include the issue of how the workers' compensation payments affected the policy limits and to stay the present case until the arbitration is over with. The Court overruled that request by Lin and Chen in an order entered in July 2020.

In the present lawsuit, Hartford Accident seeks a declaratory judgment that the $1,000,000 coverage limit in its insurance policy should be reduced not only by the $100,000 received from Chickey's insurer but also by the approximately $300,000 in workers' compensation benefits paid to Lin or for his benefit. Lin and Chen argue that the workers' compensation payments do not reduce the available coverage under the Hartford Accident policy. They also argue that in any event, the $73,320.72 they paid to settle Hartford Fire's worker's compensation lien should not serve to reduce the underinsured motorist coverage limits.

6

## Discussion

Summary judgment is appropriate if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Martinsville Corral, Inc. v. Soc'y Ins.*, 910 F.3d 996, 998 (7th Cir. 2018). The Court views the evidence and draws all reasonable inferences in the nonmoving parties' favor. *Cervantes v. Ardagh Grp.*, 914 F.3d 560, 564 (7th Cir. 2019). If the nonmoving parties fail to establish the existence of an element essential to their case, one on which they would bear the burden of proof at trial, summary judgment must be granted to the moving party. *Id.* (citing *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996)).

The primary issues on Hartford Accident's motion for summary judgment involve the interpretation of the terms of an insurance policy. Construction of an insurance policy is typically a question of law appropriately decided on summary judgment. *Twenhafel v. State Auto Prop. & Cas. Ins. Co.*, 581 F.3d 625, 628 (7th Cir. 2009).

An insurance policy is a contract, and the rules governing interpretation of contracts govern the interpretation of insurance policies. *Clarendon Nat'l Ins. Co. v. Medina*, 645 F.3d 928, 933 (7th Cir. 2011). In particular, if the terms of an insurance policy are clear and unambiguous, a court gives those terms their plain meaning and applies the policy as it is written. *Berrey v. Travelers Indem. Co. of Am.*, 770 F.3d 591, 595 (7th Cir. 2014); *Medina*, 645 F.3d at 933. If, on the other hand, a policy term that limits an insurer's liability is ambiguous—in other words, susceptible of more than one reasonable interpretation—that term is liberally construed in favor of coverage. *Medina*, 645 F.3d at 933.

7

1.      **The worker's compensation payments**

The insurance policy unambiguously provides that the $1,000,000

coverage limit is reduced by amounts paid under workers' compensation law.  As

quoted earlier, the policy states:

> 2.      Except in the event of a "settlement agreement", the Limit of
> Insurance for this coverage shall be reduced by all sums paid or
> payable:
>
> …
>
> b.      Under any workers' compensation, disability benefits or similar law.

Pl.'s Ex. A, sub-ex. 1, Form CA 21 38 10 13 at 2.  The policy defines "settlement

agreement" as follows:

> "Settlement agreement" means we and an "insured" agree that the
> "insured" is legally entitled to recover, from the owner or operator of the
> "underinsured motor vehicle", damages for "bodily injury" and, without
> arbitration, agree also as to the amount of damages. . . .

*Id.* at 4.

Hartford Accident contends that $301,259.90 was paid to Lin or for his benefit

based on his workers' compensation claim.  It argues that the $1,000,000 underinsured

motorist coverage limit is reduced by this amount.  Hartford Accident cites both the

policy language and the proposition that underinsured motorist coverage is intended to

put an injured person in the same place he would have been in if the tortfeasor had

been sufficiently insured.  *See, e.g., Berrey*, 770 F.3d at 594.  Lin and Chen argue that

the "settlement agreement" exception applies; alternatively, they argue that it may apply

in the future given the pendency of the arbitration, and thus that the matter is not ripe for

judicial determination.

Lin and Chen's first argument is that the dispute over reduction of the coverage

limit based on workers' compensation payments is not ripe for determination because there is a still-pending arbitration proceeding that concerns the amount of damages recoverable. The Court concludes that this argument lacks merit. But although ripeness is logically the first issue, it is somewhat easier to grasp if Lin and Chen's other primary objections to Hartford's summary judgment arguments are addressed first. The Court will therefore discuss the primary merits issues first and the ripeness issue immediately after.

As indicated, Lin and Chen argue that there has been a settlement agreement between them and Hartford that brings the quoted policy language into play and eliminates any workers' compensation-based reduction of the coverage limits. Specifically, they contend that Hartford did not object to their settlement with Chickey's insurer and thereby waived any subrogation rights on the $100,000 policy-limits settlement, and they argue that this amounted to a settlement agreement between them and Hartford within the policy's meaning. *See* Defs.' Resp. to Pl.'s Mot. for Summ. J. at 5.

For this, Lin and Chen rely on *American Economy Insurance Co. v. Greeley*, 2013 IL App (1st) 113403-U. The underinsured motorist coverage at issue in *Greeley* contained terms regarding reduction of coverage limits, workers' compensation, and the effect of a "settlement agreement" that are indistinguishable from those in the Hartford Accident policy. Greeley suffered a serious injury allegedly caused by the negligence of a taxi driver. He sued the taxi driver and owner and filed a workers' compensation claim. Greeley also notified his company's insurer that his damages would result in a claim under the underinsured motorist coverage provided by the company's insurance

9

policy, which as in the present case had a $1,000,000 coverage limit. Greeley then obtained a settlement offer from the taxi driver and owner for their liability insurance policy limit of $250,000. He requested directions from his company's insurer on how to proceed vis-à-vis the settlement offer. The insurer responded by denying coverage and stating in the alternative that the insurer would be entitled to a setoff equal to all amounts paid to Greeley from those legally responsible and workers' compensation. The insurer also stated that it "does not object to [Greeley] accepting [the] settlement offer [from the taxi driver and owner's insurer], and does not intend to subrogate the matter." *Greeley*, 2013 IL App (1st) 113403-U, ¶ 39.

The appellate court in *Greeley* concluded that this amounted to a "settlement agreement" within the meaning of the terms of the underinsured motorist coverage. Specifically, the court stated that the exchange of letters between Greeley's counsel and the insurer "shows that the parties reached an agreement that [Greeley] was entitled to recover the tortfeasor's policy limits of $250,000.00 that was offered and more since [the insurer] did not wish to subrogate." *Id.* ¶ 41. It concluded that "[a] settlement agreement under the policy merely requires the insurer and insured to agree that the insured . . . is legally entitled to recover damages from the tortfeasor and agree on the amount of the damages." *Id.* ¶ 38. The court concluded that there had been an "agreement between the parties that [the] settlement [with the taxi driver and owner] was justified," *id.* ¶ 41, and thus under the policy terms the only appropriate setoff against the underinsured motorist coverage limit was the amount of the $250,000 settlement in the negligence case, *not* Greeley's workers' compensation recovery.

Lin and Chen contend that *Greeley* governs here and requires a similar result.

But unlike in *Greeley*, they cite no evidence that Hartford affirmatively agreed to the settlement that Lin and Chen obtained in the lawsuit against Chickey. What appears to have happened is the following. There were several items of correspondence by Lin and Chen's attorney advising Hartford of the $100,000 policy-limits offer. Hartford initially refused to accept this regarding the terms of the settlement offer because the offer apparently was verbal, not written. But eventually Lin and Chen's attorney provided Hartford with a written confirmation. *See* Defs.' LR 56.1 Stat., Add'l Facts ¶¶ 7-15. According to Lin and Chen, "The Hartford [sic] failed to respond further to the notice of tentative settlement or tender payment of the limits of the underinsured motor vehicle liability limits tendered by Chickey within 20 days pursuant to 215 ILCS 5/143a-2(6)," and the underlying case settled as a result. *Id.* ¶ 16. Section 143a-2(6) reads as follows:

> Subrogation against underinsured motorists. No insurer shall exercise any right of subrogation under a policy providing additional uninsured motorist coverage against an underinsured motorist where the insurer has been provided with written notice in advance of a settlement between its insured and the underinsured motorist and the insurer fails to advance a payment to the insured, in an amount equal to the tentative settlement, within 30 days following receipt of such notice.

The difference between this case and *Greeley* involves the absence of an affirmative agreement to the settlement of the lawsuit against the tortfeasor. What happened here is that Hartford Accident was notified of the settlement and did not object. But Lin and Chen offer no authority to support the proposition that an insurer's failure to object to a settlement with the tortfeasor in these circumstances amounts to an "agreement" by the insurer. Hartford Accident evidently lost any subrogation rights vis-à-vis the Chickey settlement proceeds, but legally speaking, it was the above-quoted

11

statute that accomplished this result, given Hartford Accident's failure to advance a payment equal to the settlement after being notified of the settlement. On the separate issue of whether there was a "settlement agreement" under the terms of the underinsured motorist coverage, Hartford's silence and inaction in the face of the settlement offer from Chickey's insurer is not the same thing as an "agreement," in contrast to *Greeley*, where the insurer expressly okayed the settlement with the tortfeasor. As the Court has noted, Lin and Chen offer no authority suggesting otherwise.

Though not necessary to the Court's decision, it is also noteworthy that during the period in which the settlement with Chickey's insurer was discussed in 2018, Lin and Chen had already made a request for arbitration under the aforementioned policy term, pursuant to a demand they themselves initiated in June 2017. *See id.* ¶ 6. The very purpose of that arbitration was to address the amount recoverable by Lin and Chen. Nothing in Hartford Accident's words or actions at the time of the settlement with Chickey suggests that it was giving up on the arbitration mechanism as a way to resolve the apparent dispute over the amount of recoverable damages.[1]

In sum, the Court concludes that Hartford Accident's action and/or inaction vis-à-

---

[1] During oral argument, counsel for Lin and Chen contended that the arbitration is in effect a nullity. This argument makes no sense. Lin and Chen are the parties that initiated the arbitration, and they concede in their memorandum that they and Hartford "clearly agreed to hold the demand for arbitration in abeyance." Defs.' Resp. to Pl.'s Mot. for Summ. J. at 6 n.3. Nor does it make any sense, as Lin and Chen's counsel has contended, that the filing of their counterclaim somehow operated as a withdrawal of their arbitration demand. Nothing in the counterclaim says anything like that. Because Lin and Chen have done nothing that comes anywhere near an attempt to withdraw their arbitration demand, the Court need not address whether they are permitted to do that.

vis the settlement with Chickey's insurer did not amount to a "settlement agreement" within the meaning of the pertinent term in the insurance policy's underinsured motorist coverage.

Lin and Chen also contend that Hartford gave up any right to reduce the policy limits by virtue of the workers' compensation payments by executing what Lin and Chen call a "general release." Nonsense. The release, quoted earlier (and drafted by Lin and Chen's lawyer), clearly stated on its face that it simply released any lien "The Hartford" had on settlement proceeds received on account of the collision—not Lin and Chen's claim under the underinsured motorists coverage. It was in no way, shape, or form a general release of Hartford's rights vis-à-vis Lin and Chen, *see, e.g., Goodman v. Hanson*, 408 Ill. App. 3d 285, 293, 945 N.E.2d 1255, 1263 (2011) (describing the language that creates a general release) or, in particular, its rights under the insurance policy's underinsured motorists coverage.[2]

The Court also overrules Lin and Chen's contention that applying any reduction to the underinsured motorists policy limits is contrary to public policy. *See* Defs.' Resp. to Pl.'s Mot. for Summ. J. at 9-10. This argument is unsupported by any pertinent authority. The policy limits provisions at issue here in no way run afoul of the legislative mandate requiring drivers to carry liability insurance. The purpose of underinsured motorist coverage is to put the injured person in the same, but no better, position as he would have been in if the tortfeasor had adequate insurance coverage. *See Sulser v.*

---

[2] Lin and Chen say in a footnote they are entitled to discovery regarding the release, *see* Defs.' Resp. to Pl.'s Mot. for Summ. J. at 11-12 n.6, but as indicated the release is clear and unambiguous on its face, and nothing regarding the circumstances of its negotiation or the motivation of its execution would affect this.

*Country Mut. Ins. Co.*, 147 Ill. 2d 548, 555, 591 N.E.2d 427, 429 (1992); *Weber v. Mitsui Sumitomo Marine Mgmt. (USA), Inc.*, 2016 IL App (5th) 140517-U, ¶¶ 20, 26. The terms of the Hartford Accident policy that are at issue are consistent with this purpose, not contrary to it.[3]

Next, Lin and Chen argue that the amount deducted from the underinsured motorists coverage limit on account of workers' compensation should be reduced by the $73,320.72 that Lin paid to Hartford Fire from the Chickey settlement based on its subrogation rights, because Lin never received this amount.

In *Berrey*, the Seventh Circuit dealt with a similar issue. There, as here, the plaintiff, who was injured in an automobile collision, initiated a lawsuit against the at-fault driver, a workers' compensation claim against her own employer, and what the court called an "underinsurance" claim against her employer's insurer. The plaintiff received a little over $103,000 in workers' compensation benefits. By statute, the employer acquired a workers' compensation lien against any recovery that the plaintiff obtained from the tortfeasor. The tortfeasor's insurance had a policy limit of $100,000. A policy-limits settlement was reached, and the tortfeasor's insurer paid the $100,000 directly to the plaintiff's employer. The dispute before the court involved whether, under a policy term similar to that at issue in the present case, the $100,000, which the plaintiff said she had never received, reduced the amount available under her employer's

---

[3] Lin and Chen's contention that any workers' compensation-related reduction in the policy limits penalizes them for exercising the policy's provision for arbitration is likewise wholly lacking in merit. *See* Defs.' Resp. to Pl.'s Mot. for Summ. J. at 7. There is simply no connection between these two points. The reduction in the policy limits comes from specific language in the policy; it does not result in any way from Lin and Chen's demand for arbitration.

underinsured motorist coverage.  The Seventh Circuit held that it did, largely in reliance on the principle that the purpose of underinsured motorist coverage is to place the injured person in the same position she would have occupied if the tortfeasor had carried adequate insurance.  *Berrey*, 770 F.3d at 594.  The court noted that even if the tortfeasor had carried liability insurance in the amount of the plaintiff's total damages and it had all been paid out to the plaintiff, the plaintiff still would have had to pay over the $100,000 received from the tortfeasor's insurer to satisfy the worker's compensation lien.  The court concluded that the plaintiff was no worse off if the $100,000 served to reduce the underinsured coverage limits than if the tortfeasor had adequate insurance.  *Id.* at 595.  The court also relied on the fact that the language of the underinsured motorist insurance coverage required the reduction even though the $100,000 had not first been paid to Berrey:  "[h]ad [the tortfeasor] made the $100,000 payment directly to Berry, Berry would have been obligated to apply that payment toward the workers' compensation lien herself."  *Id.* at 596.

The court in *Berrey* distinguished *Roberts v. Northland Insurance Co.*, 291 Ill. App. 3d 727, 685 N.E.2d 371 (1997), *overruled on other grounds*, 185 Ill. 2d 262, 705 N.E.2d 762 (1998), which Lin and Chen cite here.  That case involved a scenario similar to that in *Berrey* and the present case, with one difference from *Berrey*:  the plaintiff's estimated damages in *Roberts* significantly exceeded the policy limits of the underinsured motorist coverage.  Specifically, his estimated damages were $1,000,000; he received a little over $246,000 in workers' compensation benefits, and the tortfeasor's liability coverage, which was limited to $50,000, was applied directly to the workers' compensation lien.  The dispute involved whether $246,000 or $50,000 less,

$196,000, should be deducted from the underinsured motorist insurer's coverage limits. The court in *Roberts* said that only the lesser reduction was appropriate, because the plaintiff "did not actually recover the $50,000" from the tortfeasor, as that sum was applied directly to the workers' compensation lien. *Id.* at 731, 685 N.E.2d at 374. Though the result in *Berrey* was seemingly in conflict with this, the Seventh Circuit distinguished *Roberts*, saying it was not controlling because it "dealt with reductions in policy *limits* rather than in amounts due. . . . [T]he court grappled with the limits of coverage under a UIM policy where the plaintiff's actual damages exceeded any potentially applicable policy limit. Roberts's actual damages totaled more than $1 million while the available UIM coverage was limited to $820,000, before any deductions for workers' compensation benefits received or payments made by the tortfeasor." *Berrey*, 770 F.3d at 597.

In this case, as in *Roberts*, the issue involves the limits of coverage under an underinsured motorist policy. And similar to *Roberts*, the injured parties contend that their actual damages far exceed the available underinsured motorist coverage, even if one adds to that the recovery from their personal injury suit and Lin's workers' compensation claim. If Lin and Chen are right about that, this case is governed by *Roberts*, not *Berrey.* The problem is that we do not know at this point. Based on the demand for arbitration, the amount of damages recoverable by Lin and Chen is supposed to be determined via the arbitration. If the outcome of the arbitration is that the remaining underinsured motorist coverage is insufficient to cover their damages, then under *Roberts* the amount paid to reimburse Hartford Fire's workers' compensation lien will *not* be deductible from the $1,000,000 underinsured motorist policy limits. If, on

16

the other hand, the underinsured motorist coverage is sufficient to fully compensate Lin and Chen, then under *Berrey* the amount paid to reimburse the lien *will* be deductible. To this extent, the dispute is not ripe for determination.

The Court turns next to Lin and Chen's more general ripeness objection, in which they argue that the issue of reduction of the policy limits is prematurely before the Court because the arbitration is still pending, and there may be a "settlement agreement" in the future. The arbitration was initiated by Lin and Chen under a term of the underinsured motorist coverage that, as quoted earlier, says the following:

> If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or drive of an "underinsured motor vehicle" or do not agree as to the amount of damages that are recoverable by that "insured", then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. Either party may make a written demand for arbitration. . . .

Pl.'s Ex. A, Form CA 21 38 10 13 at 4. Until the arbitration proceeding concludes with or without a settlement, Lin and Chen contend, there is no way to say that the "settlement agreement" exception to the coverage-limits reduction will not apply. Essentially, they argue that the Court has been asked to resolve this issue prematurely in a way that would amount to an advisory opinion.

The Court concludes that the pendency of the arbitration does not make the parties' dispute unripe, except with regard to the $73,320.72 discussed above. There is unquestionably a current and ripe dispute between the parties regarding, among other things, whether there was *already* a settlement agreement within the meaning of the policy. As far as whether matters may change in the future as the arbitration progresses, the Court has been asked to declare the parties' rights and obligations as of the present time. As Hartford argues in its reply, doing so will not preclude the parties

from reaching a settlement agreement later that modifies the current state of affairs.

For these reasons, the Court overrules Lin and Chen's ripeness/prematurity argument, except with regard to the $73,320.72 they paid to Hartford Fire. On that aspect of the parties' dispute, the matter is unripe for determination until the arbitration has been resolved.

## 2. The $100,000 settlement from Chickey's insurer

Hartford is correct that the limit of its coverage is reduced by the amount paid to Lin and Chen on behalf of Chickey, the person legally responsible for the collision that injured Lin. This is clearly and unambiguously required by the policy term that states as follows:

> 2. Except in the event of a "settlement agreement", the Limit of Insurance for this coverage shall be reduced by all sums paid or payable:
>
> a. By or for anyone who is legally responsible . . . .
>
> 3. In the event of a "settlement agreement", the maximum Limit of Insurance for this coverage shall be the amount by which the Limit of Insurance for this coverage exceeds the limits of bodily injury liability bonds or policies applicable to the owner or operators of the "underinsured motor vehicle".

Pl.'s Ex. A, sub-ex. 1, Form CA 21 38 10 13 at 2.

Lin and Chen does not appear to contest this; they say, in the course of disputing a reduction for the workers' compensation payments, that

> Section D.3 of the insurance policy taken together with Section F.3, which defines "settlement agreement" dictates that the _only_ possible set off to be applied to the parties' $1,000,000 insurance policy is the $100,000 paid to Lin/Chen by the underinsured, Chickey.

Defs.' Resp. to Pl.'s Mot. for Summ. J. at 6. That said, because Lin and Chen's response is somewhat hard to follow in places, the Court will address the point on the

merits. The only exception potentially applicable to the $100,000 from Chickey's insurer is the "settlement agreement" exception. As the Court has discussed, however, there has been no "settlement agreement" within the meaning of the insurance policy. Thus the coverage limit under the Hartford policy is reduced by entire $100,000 recovered from Chickey.

### 3.      Lin and Chen's counterclaim

Hartford Accident has moved to dismiss each of the counts of Lin and Chen's counterclaim for failure to state a claim upon which relief may be granted and to strike their affirmative defense. In considering the motion, the Court takes the counterclaim's factual allegations as true and assesses whether Lin and Chen have alleged enough facts to state plausible claims for relief. *See, e.g., O'Boyle v. Real Time Resolutions, Inc.*, 910 F.3d 338, 342 (7th Cir. 2018).

a.      The Court dismisses Count 1 because it is a duplicative mirror image of Hartford Accident's declaratory judgment claim. *See, e.g., Tenneco Inc. v. Saxony Bar & Tube, Inc.*, 776 F.2d 1375, 1379 (7th Cir. 1985). There is nothing in the counterclaim—which seeks a declaration of coverage—that will not be addressed in adjudicating Hartford Accident's claim—which seeks a declaration of non-coverage.

b.      The Court agrees with Hartford Accident that Count 2, Lin and Chen's claim for breach of contract, is premature. Hartford Accident has not denied coverage. Rather, determination of coverage is awaiting arbitration under the terms of the insurance policy, *which Lin and Chen themselves initiated.* During oral argument, counsel for Lin and Chen repeatedly complained that Hartford Accident has never "adjusted" their claim. "Adjusting" is the process of determining the amount an insurer

will pay an insured to cover a loss. *See* Black's Law Dictionary (11th ed. 2019). There are certainly any number of situations where that is done by an insurer on its own or via negotiation with the insured, but in this case Lin and Chen demanded arbitration to address that issue. That is exactly what the arbitration—which, again, Lin and Chen themselves initiated—is geared to accomplish.

c.      Count 3, asserting a bad faith claim under 215 ILCS 5/155, is premature for the same reason. Lin and Chen's primary contention is that Hartford has not paid the amount of coverage that it does not dispute. But there is no basis to say, at this point, that there is any such amount: again, determination of the amount of Lin and Chen's damages and, perhaps, their entitlement to recover damages from the underinsured motorist (Chickey) is what arbitration under the insurance policy involves. Until the arbitration is concluded or these points are determined in some other matter, the claim is premature—and it fails to state a claim in any event.

d.      Count 4, Lin and Chen's claim under the Consumer Fraud Act, is not actionable under the Act and is also preempted by section 155, because it alleges nothing beyond wrongful refusal to pay or delay in paying. *See Avery v. State Farm Mut. Auto Ins. Co.*, 216 Ill. 2d 100, 169, 835 N.E.2d 801, 844 (2005); *Cook v. AAA Life Ins. Co.*, 2014 IL App (1st) 123700, ¶ 31, 13 N.E.3d 20, 33. The Court dismisses this claim.

e.      Count 5 simply asserts a right to prejudgment interest. This is not a separate cause of action and thus is not properly asserted as a separate claim. The Court dismisses Count 5.

4.      **Lin and Chen's affirmative defenses**

A court may strike an affirmative defense if it is legally insufficient on its face. *See Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). The standard is effectively the same as the standard that governs a motion to dismiss for failure to state a claim. *See, e.g., Senne v. Village of Palatine*, No. 10 C 5434, 2013 WL 68703, at *3 (N.D. Ill. Jan. 4, 2013). Lin and Chen must make factual allegations sufficient to raise their right to assert their defenses above a "speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In assessing the defenses, the Court takes Lin and Chen's factual allegations as true and considers the defenses in the light most favorable to them. *Id.* at 572.

Certain of Lin and Chen's defenses are not "affirmative defenses" at all but rather are simply denials of matters in Hartford Accident's complaint or points Hartford Accident is required to prove, or are lacking in merit for reasons discussed with respect to Hartford Accident's motion for summary judgment. These defenses are stricken for that reason, *without* leave to amend:

- 1 (ripeness; no reduction of coverage amount for workers' compensation payments);

- 2 (improper to reduce coverage amount based on insured's demand for arbitration);

- 5 (no reduction of coverage amount based on workers' compensation benefits because there was a settlement);

- 6 (no reduction of coverage amount based on workers' compensation benefits because of the release of the workers' compensation lien);

- 7 (no reduction based on workers' compensation benefits due to absence of double compensation);

- 8 (no reduction of coverage amount based on $73,320.72 already reimbursed to insurer);

- 10 (no reduction of coverage on account of workers' compensation payments with respect to the amount of the Chickey settlement allocated to Chen);

- 12 (no case or controversy);

- 13 (abstention/lack of justiciability); and

- 16 (Hartford's suit seeks an improper advisory opinion).

Some of the defenses are legally deficient and are stricken for that reason, again without leave to amend:

- 4 (estoppel). This purported "defense" concerns what legal principles should and should not apply in adjudicating Hartford Accident's claims. That's not an affirmative defense.

- 9 (bad faith). This is duplicative of defense 3, which the Court has not stricken.

- 14 (collateral source rule). Any reduction of policy limits due to workers' compensation payments is specifically authorized by contract and is not subject to the collateral source rule.

- 15 (laches). This rather inartfully worded single sentence—which seems to be missing some words—references a purported failure to answer written discovery and an undue delay in bringing this suit. Any failure to respond to discovery should be raised as a basis to compel the discovery or seek sanctions; it's not an

affirmative defense to liability. And the claimed eight-month delay in filing suit does not give rise to a viable laches defense without more.

- 18 (insurance policy is vague and ambiguous). This is a consideration taken into account in interpreting an insurance policy, not an affirmative defense to Hartford Accident's declaratory judgment claim.

- 22 (failure to mitigate damages). This is not a defense because Hartford Accident is not suing for damages but rather for a declaratory judgment regarding its obligations.

- 23 (contention that Hartford made fraudulent representations). The claimed fraudulent representations are that the Illinois Supreme Court Rules do not apply to the arbitration and that there are set-offs for worker's compensation benefits. The first of these points is an *accurate* statement, as the Supreme Court Rules apply to matters litigated in Illinois courts, not before arbitrators. The second is also an accurate statement regarding the terms of the underinsured motorist coverage, as the Court has determined in connection with plaintiff's motion for summary judgment.

Some of the defenses are not actually "affirmative defenses" but rather are matters that must be raised by motion—which they haven't been in this case, likely because they are wholly lacking in merit. These, too, are stricken without leave to amend:

- 19 (lack of subject matter jurisdiction, personal jurisdiction, and improper venue). Diversity of citizenship jurisdiction unquestionably exists; the Court has personal

23

jurisdiction over Lin or Chen, both of whom are Illinois residents and citizens; and there is no plausible basis for a contention that venue is improper.

- 20 (failure to state a claim):  This isn't an affirmative defense, and in any event Hartford Accident's complaint *does* state a claim.

- 21 (National Liability and Win Win are necessary parties).  There is no plausible basis for this contention, which in any event would have to be raised by way of a motion.

One defense is unduly conclusory and inadequately pleaded.  It is stricken with leave to amend:

- 17 (waiver).  Lin and Chen contend that Hartford Accident has waived any reduction of coverage limits due to its pre-suit conduct, but it has not described the conduct that purportedly amounts to a waiver.

The Court declines to strike defenses 3 (lack of good faith) and 11 (waiver of right to proceed to arbitration) but makes no adjudication of the merits of these defenses.

## Conclusion

For the reasons stated above, the Court grants plaintiff's motion for summary judgment [42] in part and concludes that the $1,000,000 coverage limit in plaintiff's underinsured motorists coverage is, with respect to defendants' claims, reduced by a total of $327,939.18 ($100,000 plus $301,259.90 less $73,320.72).  The Court denies plaintiff's motion with respect to the $73,320.72, on which the parties' dispute is not yet ripe for adjudication.  The Court grants plaintiff's motion to strike and dismiss defendants' counterclaim and grants in part their motion to strike defendants' affirmative

defenses [46].  In particular, all affirmative defenses other than defenses 3, 11, and 17 are stricken without leave to amend, and defense 17 is stricken with leave to amend within 14 days.  This case and related Case No. 20 C 3767 are set for a telephonic status hearing on February 22, 2021 at 9:45 a.m., using call-in number 888-684-8852, conference code 746-1053.  Counsel should wait for the case to be called before announcing themselves.  All counsel in both cases should be prepared to discuss next steps and deadline for completing all remaining pretrial matters.

Date:  February 15, 2021

_____
MATTHEW F. KENNELLY
United States District Judge