CERTIFIED COPY
A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

In the

# United States Court of Appeals
### For the Seventh Circuit

———————————————

Nos. 22-2776 & 22-2858

HARTFORD ACCIDENT AND INDEMNITY CO.,

*Plaintiff-Appellee/Cross-Appellant,*

*v.*

ZHEN FENG LIN and LI CHEN,

*Defendants-Appellants/Cross-Appellees.*

———————————————

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:20-cv-01415 — **Matthew F. Kennelly**, *Judge*.

———————————————

ARGUED JUNE 1, 2023 — DECIDED APRIL 1, 2024

———————————————

Before EASTERBROOK, WOOD, and PRYOR, *Circuit Judges*.

PRYOR, *Circuit Judge*. Zhen Feng Lin was in a car accident while working as a food delivery driver for Win Win Seafood Wholesale, LLC in 2017. Lin sustained serious injuries in the collision, but the at-fault driver, Katherine Chickey, was underinsured. Lin—along with his wife, Li Chen, who brought a loss of consortium claim—settled with Chickey in a state-court suit for her insurance policy limits of $100,000. Lin also received workers' compensation benefits from his employer's

workers' compensation insurance carrier, Hartford Fire Insurance Company ("Hartford Fire"). Lin then sought to recoup his additional losses under his employer's underinsured motorist policy, provided by Hartford Accident and Indemnity Company ("Hartford Accident").

Although Lin and Hartford Accident initially agreed to arbitrate the question of Lin's damages, the insurer and the insured saw eye to eye on little else. Unable to resolve issues around arbitration and the underinsured motorist policy limits, Hartford Accident filed this declaratory judgment suit against Lin and Chen in federal court seeking to clarify the extent of its liability. [1]

Over the next four years, the parties sparred over the scope of the policy's arbitration clause, whether Hartford Accident acted in bad faith in delaying the resolution of Lin's claim, and to what extent the underinsured motorist policy's $1 million limit should be reduced by sums Lin received from other sources. In the end, neither party was satisfied with the result, and both appealed. Because the district court was correct on all fronts, we affirm.

## I. BACKGROUND

This appeal involves orders at various stages of litigation: a dismissal under Federal Rule of Civil Procedure 12(b)(6); an order denying a motion to compel arbitration; and a grant of a motion for summary judgment under Federal Rule of Civil Procedure 56. In reviewing the dismissal and summary judgment orders, we take the facts and allegations and view them

---

[1] From here, we refer to Lin and Chen collectively as "Lin," unless context requires us to distinguish between the two.

in the light most favorable to Lin and Chen, the non-movants, and construe all reasonable inferences in their favor. *Dixon v. County of Cook*, 819 F.3d 343, 346 (7th Cir. 2016). For the order denying Lin's motion to compel arbitration, we view the facts in the light favorable to Hartford Accident. *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735–36 (7th Cir. 2002).

Zhen Feng Lin was injured in a car accident in Chicago on March 24, 2017, while making a delivery for his employer, Win Win Seafood Wholesale, LLC. The impact of the crash knocked him unconscious and fractured his spine. Lin sought compensation to cover the medical costs, pain, and lost work associated with his injuries.

First, Lin went to state court and sued Katherine Chickey, the driver who crashed into him. *See Lin v. Chickey*, No. 2017-L-00571. Then, about a month after he sued in state court, Lin, pursuant to the Illinois Workers' Compensation Act, filed a claim with Win Win Seafood. Lin recouped $301,259.90 in workers' compensation benefits from his employer's workers' compensation insurance carrier, Hartford Fire. Lastly, Lin demanded payment from his employer's commercial automobile insurer, Hartford Accident, under the underinsured motorist policy requesting benefits and arbitration of his claim.[2] (Hartford Fire and Hartford Accident are separate entities.) Hartford Accident responded to the demand letter requesting more information and noted that the matter was not ripe for arbitration.

---

[2] Lin was covered under Win Win's insurance policy with Hartford Accident.

## A. Lin Settles Personal-Injury Lawsuit

Lin's threefold approach soon started to pay dividends. After about a year of state-court litigation, Chickey offered to settle for her policy limits—$100,000. Lin asked Hartford Accident for permission to agree to the settlement offer. Before receiving a response from Hartford Accident, however, Lin entered into a settlement agreement with Chickey, and the state court allocated the proceeds in August 2018. An attorney for Hartford Accident eventually responded—in January 2019—that the company had "no objection" to Lin accepting the proposed settlement offer.

## B. Lin Receives Workers' Compensation Award

In July 2019, after resolving his claims against Chickey, Lin received workers' compensation benefits. In total, Lin was awarded $301,259.90 in workers' compensation benefits, which consisted of indemnity (temporary total disability) payments, medical costs, and a lump-sum settlement. (The parties dispute the legal implication of these different payments, but they agree on the total.)

These sums were paid out by Hartford Fire, Win Win Seafood's workers' compensation provider. But because Win Win Seafood was not responsible for the accident, Hartford Fire, under Illinois's Workers' Compensation Act, was entitled to a lien against any funds Lin obtained from at-fault parties. Utilizing funds from the state court settlement, Lin paid Hartford Fire $73,320.72 to satisfy its lien.

This put an end to two of Lin's recovery paths—the personal-injury suit and workers' compensation. Lin, however, believed that he was still not made whole. Indeed, he calculated that that his damages were over $2.5 million. Because of

this shortfall, Lin resumed his discussions with Hartford Accident.

### C. Lin Rebuffed by Hartford Accident

Hartford Accident's underinsured motorist policy is meant to cover the difference between what an insured employee is legally entitled to recover from the at-fault driver for bodily injuries sustained in an accident, and what the at-fault driver is able to pay, up to $1 million. Unless the parties reach a "settlement agreement," as defined by the policy, the amount recovered by the insured shall be reduced by any sums "paid or payable" by anyone legally responsible for the insured's injuries or under any workers' compensation.[3]

Here, as soon as the settlement proceeds were allocated and the workers' compensation claim was resolved, Lin again submitted a demand to Hartford Accident, this time for $900,000 under the policy. Lin made what he believed to be a "policy-limits demand," subtracting the $100,000 that he had already received from Chickey in the settlement.

Hartford Accident rejected the demand. It contended that the policy limit should be further reduced to account for the money Lin had received in workers' compensation. With that calculation in mind, Hartford Accident counteroffered to settle at $100,000.

Lin declined the counteroffer, which he said was so low that it had to have been made in bad faith. Lin also argued that Hartford Accident's reduction of the policy limits was incorrect because there had been a settlement agreement

---

[3] This provision of the Hartford Accident underinsured motorist policy appears in Section D.2 of the Endorsement.

between the parties. Moreover, Lin maintained that Hartford Accident did the math wrong. He argued that the amount he paid to resolve the workers' compensation lien—$73,320.72—should be credited to him, and not deducted from the policy limits.

### D. Federal Court Proceedings

Because of this impasse, Hartford Accident filed a complaint seeking a declaratory judgment in the Northern District of Illinois to resolve the extent of its liability to Lin.

Before filing an answer, Lin asked the district court to stay or dismiss the lawsuit in favor of arbitration. In support, he pointed to the arbitration clause in Hartford Accident's insurance policy:

> If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "underinsured motor vehicle" or do not agree as to the amount of damages that are recoverable by that "insured", then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated.

Under this provision, Lin argued, the parties agreed to arbitrate not only the subject of Hartford Accident's complaint—the extent of the workers' compensation setoff—but also whether Hartford Accident acted in bad faith in dealing with his claim.

The district court denied the motion, finding the arbitration clause unambiguous and the dispute at issue in Hartford Accident's complaint—regarding the proper setoffs to policy limits—not the type of disagreement that the parties agreed

Case: 1:20-cv-01415 Document #: 163 Filed: 04/23/24 Page 7 of 25 PageID #:3722
Case: 22-2776    Document: 00714367888    Filed: 04/23/2024    Pages: 25

to arbitrate. Instead, the district court determined the parties had agreed to arbitrate only two, distinct things: disputes over fault and the amount of damages that are recoverable by the insured.

Following the court's ruling on the motion to stay, Lin filed his answer asserting various counterclaims, including one for bad faith.

Hartford Accident then moved for summary judgment arguing that because there was no "settlement agreement" between Lin and Hartford Accident, the policy limits in this case should be offset by both the Chickey settlement and Lin's total workers' compensation award. In response, Lin argued that the underinsured motorist policy limit should be reduced only by the Chickey settlement of $100,000. He also maintained in the alternative that, if the district court decided to offset the policy limits by the amount of workers' compensation, then the amount that he paid to settle the statutory lien—$73,320.72—should be credited back to him, and not deducted from the policy limits. Lin also asked the district court to defer ruling on the motion until Hartford Accident produced additional discovery.

To start, the district judge denied Lin's request to defer ruling on the motion until Lin received more discovery, finding the present dispute to be legal, and not factual. As for the merits, the district court ultimately agreed with Hartford Accident's reading of the policy language and determined looking at the evidence that the parties had not entered into a settlement agreement, so the policy limit should be further reduced to account for what Lin had received in workers' compensation benefits.

Under the terms of Hartford Accident's underinsured motorist policy, the district court determined, both the $100,000 settlement and Lin's $301,259.90 workers' compensation award should be deducted from the policy limits. The district court also concluded, however, that it was too early to determine whether the amount that Lin paid to Hartford Fire to settle the workers' compensation lien should be credited back to Lin. The court noted that if Lin's total damages, after arbitration, were found to exceed the policy's limit, only the money that he had retained after satisfying Hartford Fire's lien would be factored into the policy reduction. Additionally, the district court dismissed Lin's counterclaims, specifically finding his bad faith claim premature.

Next, the district court ordered the parties to arbitrate the issue of Lin's damages. The arbitration panel calculated Lin's damages at $1,063,895.00. Because this amount exceeded the policy limits, Hartford Accident—in line with the district court's summary judgment ruling—credited Lin for the amount he paid to settle the workers' compensation lien. In the end, Hartford Accident issued Lin a check, in accordance with the district court's summary judgment ruling, for $672,060.82.

Lin was not done with the lawsuit, though. In May 2022, Lin filed an amended counterclaim alleging that Hartford Accident breached its contract and acted in bad faith in unreasonably drawing out the process of paying out his claim. Finding no plausible claim that would support the argument that Hartford Accident unreasonably delayed settling Lin's claim, the district court dismissed these allegations.

The district court then entered final judgment. Both parties appealed.

## II. Analysis

On appeal, Lin argues that the district court erred in three ways. First, by denying his motion to compel arbitration of his bad faith claim against Hartford Accident.[4] Second, by dismissing his amended counterclaims. And third, by concluding that the money Lin received in workers' compensation benefits should be included in the underinsured motorist policy limits. On cross-appeal, Hartford Accident takes issue with the district court's interpretation of the policy's reductions clause, arguing that the limit should have been further reduced to account for the full $100,000 Lin received in settlement awards. In other words, Hartford Accident argues that Lin should not have been credited for the amount he paid to settle his workers' compensation lien.

We review each of the disputed decisions de novo, meaning we take a fresh look at the issues. *E.g.*, *United Nat. Foods, Inc. v. Teamsters Local 414*, 58 F.4th 927, 933 (7th Cir. 2023) (reviewing denial of motion to compel arbitration); *Smykla v. Molinaroli*, 85 F.4th 1228, 1234 (7th Cir. 2023) (reviewing a grant of a Rule 12(b)(6) motion to dismiss); *Ellison v. USPS*, 84 F.4th 750, 755 (7th Cir. 2023) (reviewing a grant of summary judgment).

Because our jurisdiction is based on diversity of citizenship, we look to the forum state's choice-of-law rules to determine which state's substantive laws apply. *Sosa v. Onfido, Inc.*, 8 F.4th 631, 637 (7th Cir. 2021). The parties do not dispute that Illinois law applies here. *See Donaldson v. Johnson & Johnson*,

---

[4] At oral argument, Lin affirmatively waived any argument that the district court should have compelled the parties to arbitrate how much the policy limits should be offset.

37 F.4th 400, 406 (7th Cir. 2022). Therefore, we must resolve this appeal how we believe the highest court of Illinois would if this case were before that tribunal. *Green Plains Trade Grp., LLC v. Archer Daniels Midland Co.*, 90 F.4th 919, 927 (7th Cir. 2024). In predicting what the Illinois Supreme Court would do, we may rely on the holdings of the Illinois appellate courts, when there is no prevailing authority from the Illinois Supreme Court. *Id.*; *see also Baltzell v. R&R Trucking Co.*, 554 F.3d 1124, 1130 (7th Cir. 2009).

### A. Lin's Motion to Compel Arbitration

The first of Lin's arguments on appeal merits little discussion. He argues that the district court erred by not compelling arbitration of his bad faith claim asserted under 215 ILCS 5/155(1), a section of the Illinois Insurance Code that allows individuals to recover attorneys' fees when an insurer unreasonably and vexatiously delays providing coverage.

Yet, arbitration is a creature of contract. *ACME-Wiley Holdings, Inc. v. Buck*, 799 N.E.2d 337, 341–42 (Ill. App. Ct. 2003) ("While arbitration is a favored method of dispute resolution, the courts have consistently cautioned that an agreement to arbitrate is a matter of contract."). A party "cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Scheurer v. Fromm Family Foods LLC*, 863 F.3d 748, 752 (7th Cir. 2017) (citation omitted). Recall the language of the parties' arbitration agreement:

> If [Hartford Accident] and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "underinsured motor vehicle" or do not agree as to the amount of damages that are

> recoverable by that "insured", then the matter
> may be arbitrated. However, disputes concern-
> ing coverage under this endorsement may not
> be arbitrated.

This unambiguous language reveals Lin and Hartford Acci-
dent agreed *maybe* to arbitrate two types of disputes: Lin's
entitlement to recover damages from Chickey and the amount
of damages. The parties' narrow arbitration agreement
simply does not cover bad faith claims, and therefore the dis-
trict court was correct in denying Lin's motion to stay and
compel arbitration.

Lin resists this conclusion by citing a case in which we
deemed arbitration necessary for a bad faith claim. *See Hen-
nessy Indus., Inc. v. Nat'l Union Fire Ins. Co.*, 770 F.3d 676, 678–
80 (7th Cir. 2014). In *Hennessy*, the contractual language man-
dated arbitration of "any dispute" that required interpreting
the contract. *Id.* at 678. Because the unreasonableness of the
insurer's delay was one such dispute, we held that the in-
sured's section 155 claim was subject to arbitration. *Id.* But ar-
bitration in one case doesn't compel arbitration in all cases.

The parties' narrow arbitration clause in this case does not
cover bad faith claims. The fact that the arbitration clause con-
sidered in *Hennessy* cast a wider net does not alter this analy-
sis in any way.

### B. Lin's Amended Counterclaims

When the district court denied his motion to compel arbi-
tration, Lin filed five counterclaims, including for breach of
contract and bad faith. The district court dismissed these
claims as premature while arbitration was pending. A few
months later, the arbitration panel awarded damages to Lin

and Hartford Accident paid. Lin then filed an amended counterclaim alleging three separate actions: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; and (3) unreasonable and vexatious delay under Illinois's insurance laws. The district court dismissed the amended counterclaims with prejudice finding that an amendment would be futile.

In the amended counterclaim, Lin alleged that Hartford Accident had "[a]ll pertinent information" that it needed to evaluate his insurance claim, but that Hartford Accident breached its contractual duties under the policy by failing to "promptly and comprehensively adjust" it. Before the district court and again on appeal, Lin asserts that Hartford Accident's duty to adjust his claim was an implied one in the contract, stemming from various provisions of the Illinois Insurance Code and the Illinois Administrative Code.

While we recognize this behavior may have run afoul of Illinois's insurance regulations, Lin points to nothing in the plain language of the only document that matters to his breach of contract claim—the insurance policy—that required Hartford Accident to adjust his claim within a certain timeline. *Bernacchi v. First Chicago Ins. Co.*, 52 F.4th 324, 329–30 (7th Cir. 2022) (affirming dismissal of breach-of-contract claim premised on breaches of Illinois' insurance regulations, not policy provisions). As we explained in *Bernacchi*, an alleged regulatory violation alone does not create a private cause of action. *Id.* at 330. Therefore, because Hartford Accident's contractual provisions do not incorporate these state regulations and statutes, Lin's claim fails.

Lin's reliance on the covenant of good faith and fair dealing fares no better. In Illinois, the implied covenant of good

faith and fair dealing is an interpretive tool of contract con-
struction, ensuring only that parties "do not try to take ad-
vantage of each other in a way that could not have been con-
templated at the time the contract was drafted." *Cramer v. Ins.
Exch. Agency*, 675 N.E.2d 897, 903 (Ill. 1996); *see also Fox v.
Heimann*, 872 N.E.2d 126, 134 (Ill. App. Ct. 2007). It does not
allow parties to add terms to a contract that are not there. *Mid-
West Energy Consultants, Inc. v. Covenant Home, Inc.*, 815
N.E.2d 911, 915–16 (Ill. App. Ct. 2004). In other words, we can-
not use this doctrine to rewrite the parties' contract to impose
obligations that the parties did not agree to.

The Hartford Accident policy does not mention a duty to
adjust, much less the strict deadlines that Lin claims Hartford
Accident was bound to abide by. Thus, the district court was
correct in finding no plausible claim dismissing Lin's
amended breach of contract and bad faith counterclaim.

Lin's amended counterclaim also reasserted his request
for statutory penalties for Hartford Accident's sluggish han-
dling of his claim based on § 155 of Illinois's Insurance Code.
*See* 215 ILCS 5/155. This argument also fails. Section 155 al-
lows individuals to recover penalties from insurance compa-
nies that unreasonably and vexatiously delay settling a claim.
*Id.* Lin believes that he is entitled to these damages because
Hartford Accident waited two and a half years after he made
a policy-limits demand on July 11, 2019, to issue him a check.

We see nothing in the record, however, to suggest that
Hartford Accident's delay was either unreasonable or vexa-
tious. Lin first sent his claim for coverage and demand for ar-
bitration on June 7, 2017. The parties then agreed to hold the
claim in abeyance until everything was resolved with Chickey
and Lin's workers' compensation claim. It appears that the

workers' compensation claim was resolved around July 11, 2019.

From that date until arbitration in December 2021, the parties disputed and then litigated the application of the policy's reductions clause. An insurer's delay is not unreasonable when "there is a bona fide dispute concerning the scope and application of insurance coverage." *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 200 F.3d 1102, 1110 (7th Cir. 2000).

As for the length of time it took for the district court to resolve the matter, we agree with the district judge closest to the action that this delay must be attributed to Lin himself. Over the course of two years, Lin's counsel sought to expand the scope of arbitration to include disputes not covered by the policy's arbitration clause, then moved to withdraw the arbitration demand altogether, refused to meet and confer without a court reporter, and engaged with opposing counsel in a manner that prompted a sharp rebuke from the district court.

Section 155 sanctions are unwarranted here. In sum, the district court properly dismissed Lin's amended counterclaims.

### C. Calculation of the Policy Reductions

Finally, we must resolve two matters regarding how much Hartford Accident's policy limits should be reduced to account for the money that Lin received from other sources. Recall that Hartford Accident's underinsured motorist policy had a $1,000,000 limit. On appeal, the parties agree that this limit should be reduced by the $100,000 that Lin received from the Chickey settlement. But the parties continue to disagree about whether the policy limits should be further

reduced by the amount that Lin received in workers' compensation, and, if so, whether Lin should be credited for the amount that he paid back to Hartford Fire—$73,320.72—to resolve the workers' compensation lien.

On appeal, Lin argues that the maximum coverage should be $900,000—the policy limits minus the at-risk driver settlement agreement. In its cross-appeal, Hartford Accident insists that the district court rightly reduced the policy limits by the workers' compensation award, but the court went awry in crediting Lin for the $73,320.72 that he paid to resolve the workers' compensation lien.

*1. Reduction for Workers' Compensation*

Whether Lin's workers' compensation benefits were rightly counted against him depends on whether the parties entered into a settlement agreement. The policy provides that "except in the event of a 'settlement agreement,'" the $1 million limit of insurance shall be reduced by all sums "paid or payable" by anyone legally responsible for the accident and by all sums paid under any workers' compensation. Comparatively, when the insurer and the insured settle, the $1 million policy limit is reduced only by "the limits of bodily injury liability bonds or policies applicable to the owner or operator of the 'underinsured motor vehicle.'" In other words, without a settlement agreement, Hartford Accident would be entitled to deduct—among other things—whatever Lin received in workers' compensation benefits.

Lin argues that the district court erred by finding that the parties had not entered into a "settlement agreement." Under the underinsured motorist policy at issue, a "settlement agreement" exists if the parties:

> agree that the "insured" is legally entitled to re-
> cover, from the owner or operation of the "un-
> derinsured motor vehicle," damages for "bodily
> injury" and, without arbitration, agree also as to
> the amount of damages. Such agreement is final
> and binding regardless of any subsequent judg-
> ment or settlement reached by the "insured"
> with the owner or operator of the "underin-
> sured motor vehicle."

In other words, the parties must have agreed both as to (1) liability and (2) the amount of damages.

Lin argues that he entered a "settlement agreement" with Hartford Accident when a Hartford Accident representative confirmed via email in January 2019 that the company had "no objection" to Lin accepting the settlement offers in the state personal-injury suit. In Lin's telling, by not objecting to the settlement agreement between him and Chickey, Hartford Accident admitted that Lin was not at fault, that Chickey was underinsured, and that Lin was entitled to recover from Hartford Accident. In his view, this counted as an agreement both as to liability and as to the amount of damages. Therefore, the policy limit should not have been further reduced by the $301,259.90 that he received in workers' compensation bene-fits.

In response, Hartford Accident maintains that its indica-tion that it had "no objection" to the state settlement did not qualify under the policy as a "settlement agreement." Among other things, Hartford Accident points out that Lin demanded arbitration on the "amount of damages," therefore the parties could not have agreed to settlement prior to the arbitration proceedings.

We agree with Hartford Accident. The clear and unambiguous terms of insurance policies must be enforced as written. *E.g.*, *Galarza v. Direct Auto Ins. Co.*, ___ N.E.3d ___, ___, 2023 IL 129031, ¶ 38 (Ill. 2023); *Sproull v. State Farm Fire & Cas. Co.*, 184 N.E.3d 203, 209 (Ill. 2021); *Sanders v. Illinois Union Ins. Co.*, 157 N.E.3d 463, 467 (Ill. 2019). Here, the plain language of the insurance policy says that there is a "settlement agreement" only if the parties agree on liability and the amount of damages the insured suffered in the underlying accident. That never happened here. There simply was no discussion—much less agreement—about what Lin's total damages might be. Moreover, Hartford Accident's "no objection" email came months after Lin received the settlement proceeds from the personal-injury suit. Without more, we cannot say that Hartford Accident entered into a settlement agreement with Lin simply by not objecting to something that had already happened.

Lin's argument rests entirely on *American Economy Insurance Company v. Greeley*, 2013 IL App (1st) 113403-U, an unpublished Illinois appellate court decision that interpreted a similar insurance provision.[5] *Greeley* concluded that, by declining to object to a settlement agreement between the insured and the tortfeasor, the insurer itself entered into a settlement agreement with the insured. We first note that Illinois

---

[5] In *Greeley*, a passenger was seriously injured while exiting a taxi. 2013 IL App. (1st) 113403-U, ¶ 12. He sued the taxi driver, who offered to settle the case for his policy limits, $250,000. *Id.* ¶ 39. The passenger asked his underinsured motorist insurance provider for approval; it responded that it "d[id] not object" to the passenger accepting the settlement offer. *Id.* Interpreting the same insurance provisions involved in this case, *see id.* ¶¶ 28–29, the *Greeley* court decided that the parties had entered into a "settlement agreement," *id.* ¶ 41.

prohibits parties from citing unpublished decisions as precedent except under limited circumstances not relevant here. *See* ILL. SUP. CT. R. 23(e). Even if *Greeley* could be cited for persuasive purposes, the facts of this case and *Greeley* are distinguishable. In *Greeley*, the insurance company's "no objection" email came *before* the insured received any proceeds from the personal-injury lawsuit. 2013 IL App. (1st) 113403-U, ¶¶ 12, 37–39. Here, on the other hand, Hartford Accident's "no objection" email came months after Lin received the tortfeasor's settlement proceeds. So, even if we accept that the communications here are like those in *Greeley*, the difference in timing is enough to command a different result.

Because the district court was correct in finding that Lin and Hartford Accident had not entered into a "settlement agreement," the district court did not err in reducing the underinsured motorist policy limit by the amount of Lin's workers' compensation award. The district court also properly calculated this setoff as $301,259.90, which is the sum of Lin's medical and disability payments, in addition to his lump-sum workers' compensation settlement.[6]

One final word on this issue. Lin briefly contends that the district judge abused his discretion by denying his motion for

---

[6] This workers' compensation setoff accounts for medical payments and disability payments, which includes any lump-sum workers' compensation settlement. 820 ILCS 305/8(a)–(b) (listing amount of compensation under Workers' Compensation Act as including medical costs and temporary total disability payments); *id.* at 305/10.1 (allowing employee to receive lump-sum workers' compensation payment in lieu of permanent disability payments); *Berrey v. Travelers Indem. Co. of Am.*, 770 F.3d 591, 593 & n.1 (7th Cir. 2014) (applying Illinois law) (reciting workers' compensation benefits as including medical bills and disability payments).

additional discovery before ruling on Hartford Accident's motion for summary judgment concerning this issue. Lin argues that he needed to discover Hartford Accident's claim file, which, he says, would have revealed "critical evidence" that there was a "settlement agreement" between the parties. But determining whether there was a "settlement agreement" here is only a question about whether the parties had a meeting of the minds about liability and the amount of damages. Whether that happened or not is answered by the parties' external communications, not by Hartford Accident's internal discussions contained in their claim file. Because Lin already knew Hartford Accident's position on his desire to settle with Chickey and it was part of the summary judgment record, the district judge did not abuse his discretion in denying Lin's motion for additional discovery before ruling. *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 628 (7th Cir. 2014) (affirming denial of Rule 56(d) motion because requested discovery was not "material to the district court's summary judgment ruling").

### 2. Credit for Settlement of Workers' Compensation Lien

Finally, we turn to Hartford Accident's cross-appeal, which deals with whether the district court correctly reduced the policy limit by only the money Lin retained after satisfying his lien with Hartford Fire, rather than the full sum of his settlement and workers' compensation awards.

To recap, after Lin was hurt on the job, he received two payments from sources other than Hartford Accident. First, he received $100,000 in settlement proceeds from the personal-injury lawsuit. Second, he collected $301,259.90 in workers' compensation. Lin then paid $73,320.72 of that settlement recovery to Hartford Fire to execute a release of its

lien.[7] This left Lin with $327,939.18 in his pocket, which is the only amount the district court held should be counted against him when calculating the policy reductions.

As noted above, Section D.2 of the underinsured motorist policy provides that, except in the event of a settlement agreement, the limit of insurance will be reduced by all sums "paid or payable" by anyone who is legally responsible for the accident—in this matter, Chickey—and under any workers' compensation law. For the reasons stated herein, we agree with the district court that this provision requires that the policy limit be reduced only by the amount Lin actually retained following his payment of the workers' compensation lien. This conclusion aligns with both the text of the policy, as interpreted by Illinois courts, and the purpose of underinsured motorist insurance coverage in Illinois.

In *Acuity v. Decker*, an Illinois appellate court interpreted the same contractual language that we have here and concluded that the insurance company should not be allowed to reduce its policy limits by the amount that the insured driver paid to satisfy his worker's compensation lien. 46 N.E.3d 402, 406–07 (Ill. App. Ct. 2015). The reason why derived, in part,

---

[7] When an employee suffers a job-related injury and recovers both from a third party and through workers' compensation, "Illinois law gives the employer a lien on any recovery that an employee obtains from a third party." *Baltzell v. R&R Trucking Co.*, 554 F.3d 1124, 1127 (7th Cir. 2009) (citing 820 ILCS 305/5(b)). This lien allows an employer to "get[] first crack" at the third-party recovery. *Id.* The reason for this is that workers' compensation is not meant to provide a double recovery for employees. *E.g.*, *Scott v. Indus. Comm'n*, 703 N.E.2d 81, 88 (Ill. 1998). So, Hartford Fire was entitled by law to have a lien on any of Lin's $100,000 settlement proceeds from the personal-injury lawsuit. *See* 820 ILCS 305/5(b); *Baltzell*, 554 F.3d at 1127.

from the text of the policy which provided that the only reductions to the limits were for those coming from a "sum paid" from certain third parties. *Id.* at 405. Relying on this language, the court explained that when the insured driver settled his workers' compensation lien, he no longer had "received" that money for purposes of calculating his underinsured motorist recovery. *Id.* at 406–07 ("When the [money] was paid for the workers' compensation lien, that amount was no longer part of Decker's workers' compensation award, *i.e.*, it was no longer a sum paid on the workers' compensation claim, or an amount Decker actually recovered.").

In coming to this conclusion, the *Acuity* court relied on a prior decision in *Roberts v. Northland Insurance Company*, 685 N.E.2d 371 (Ill. App. Ct. 1997), *aff'd in part, rev'd in part*, 705 N.E.2d 762 (Ill. 1998). In *Roberts*, an Illinois appellate court calculating the limits on an underinsured motorist policy determined that the policy could not be reduced by the insured's settlement payment because the entire amount had been paid directly to the workers' compensation carrier to resolve its lien. 685 N.E.2d at 374. The court reasoned that the insured had not "actually recover[ed]" the settlement award, and therefore the insurer was not allowed to reduce its policy limits to account for it. *Id.* To the *Acuity* court, this holding supported its conclusion that underinsured motorist policy set-offs should be limited to only those amounts actually received by, or paid to, the insured. 46 N.E.3d at 407.

The situation in *Acuity* is virtually indistinguishable from the one we have here. Moreover, its holding is well-supported by precedent and well-grounded in the text of the policy. Using our best judgment, we believe that *Acuity*'s approach is also the approach the Illinois Supreme Court would adopt

were the issue before it. *See Zahn v. North American Power & Gas*, 815 F.3d 1082, 1087 (7th Cir. 2016) (stating that, when there is no Illinois Supreme Court decision on point, we must use our best judgment to estimate how the Illinois Supreme Court would apply the state's law); *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 637 (7th Cir. 2002) (noting that we must "give great weight to the holdings of the state's intermediate appellate courts").

In coming to this conclusion, we disagree with Hartford Accident that our opinion in *Berrey v. Travelers Indemnity Company of America* requires a different result. 770 F.3d 591, 594–98 (7th Cir. 2014) (applying Illinois law). In *Berrey*, we dealt with a driver who suffered $310,000 in damages but only received $100,000 from the tortfeasor's insurance company. *Id.* at 593. The injured driver had underinsured motorist coverage with a $1,000,000 per-accident policy limit. *Id.* Because the amount of damages was less than the policy limits, we found the question of policy limit reductions "irrelevant" and the provision of the policy that dealt with these reductions "inapplicable." *Id.* at 595. *Berrey*, then, provides us no guidance on what counts as a "sum paid" applicable to reduce Hartford Accident's limit under Section D.2 of the underinsured motorist policy.[8] It's *Acuity*, instead, that leads the way.

Not reducing the policy limits by the amount that Lin paid to settle his workers' compensation lien is also supported by

---

[8] To be sure, *Berrey* does discuss Section D.4, which says that "[n]o one will be entitled to receive duplicate payments for the same elements of 'loss.'" 770 F.3d at 596. This provision is largely not implicated in this appeal, but Hartford Accident does suggest, in only one paragraph, that crediting Lin for the $73,320.72 that he paid to settle the workers' compensation lien "granted Lin a duplicate payment." We don't see how. This

the purpose of underinsured motorist coverage in Illinois, which is "to place the insured in the same position he would have occupied if injured by a motorist who carried liability insurance in the same amount as the policyholder." *Sulser v. Country Mut. Ins. Co.*, 591 N.E.2d 427, 430 (Ill. 1992); s*ee also Banes v. Western States Ins. Co.*, 616 N.E.2d 1021, 1025 (Ill. App. Ct. 1993) ("[T]he setoff or reduction provision of the insurance policy must be read in conjunction with the public policy behind the statute and the coverage intended by the insurance policy.").

Here, Hartford Accident issued an underinsured motorist insurance policy with a $1,000,000 per-accident cap, and Lin's damages—as found by an arbitral panel—were in excess of that limit, at $1,063,895. Prior to the damages' determination, Lin received $301,259.90 in workers' compensation payments from Hartford Fire and $100,000 in settlement award payments from Chickey, for a total of $401,259.90. He then had to pay $73,320.72 *back* to Hartford Fire to settle the workers' compensation lien. Because of this fact, the district court determined that Lin had actually received only $327,939.18 from third parties—that's $100,000 (the settlement) plus $301,259.90 (the workers' compensation) *minus* $73,320.72 (the lien settlement). The district court's calculation was

---

case is not like *Berrey,* in which the injured driver wanted the insurance company to pay the full amount of her damages—on top of the settlement from the tortfeasor and workers' compensation proceeds that she received. *Id.* at 593, 595–96. That's a double recovery; she wanted more than $413,000, while her damages were pegged at $310,000. *Id.* at 595. Here, though, Lin seeks only to make himself whole—up to $1,000,000—as if the tortfeasor were adequately insured.

correct and aligns with Illinois public policy. *See Sulser*, 591 N.E.2d at 430.

Under Hartford Accident's reading of the policy, it would reduce the $1,000,000 limit by the full Chickey settlement—$100,000—and the entire workers' compensation award—$301,259.90—and call it a day. But this ignores the fact that Lin had to pay $73,320.72 of his workers' compensation award *back* to Hartford Fire to settle its lien on his settlement proceeds. It's Hartford Accident's burden—based on Illinois's public policy—to bridge the shortfall between its policy limits ($1,000,000) and that amount that he received from third parties. *Id.* That's $672,060.82—the exact amount it ended up tendering to Lin, pursuant to the district court's rulings.

By reducing the policy limits by $327,939.18 and requiring Hartford Accident to pay Lin $672,060.82, the district court ensured that Lin recovered a total of $1,000,000, thus fulfilling the purpose of underinsured motorist coverage under Illinois law. Had the court reduced the award by Lin's workers' compensation and Lin's settlement recovery *without* factoring in the lien payment—as Hartford Accident suggests it should have—Lin would have recovered less than what he would have recovered had Chickey been insured for $1,000,000—an untenable result.

Crediting Lin with the amount he spent to settle the workers' compensation lien does not grant him a double recovery. Instead, it merely reflects the amount Lin actually received. Any other result would be an impermissible underpayment on the part of Hartford Accident. *Acuity*, 46 N.E.3d at 406-07.

For these reasons, we find the district court was correct in calculating the appropriate setoffs in this case and the applicable policy limit.

\* \* \*

We conclude by briefly addressing the matter of sanctions. Hartford Accident has moved for sanctions against Lin's attorney pursuant to Federal Rule of Appellate Procedure 38. We agree with Hartford Accident that some of Lin's claims raised on appeal are frivolous and are concerned that Lin's counsel did not mention a recent case of ours, *Bernacchi*, 52 F.4th at 325, which squarely foreclosed some of his counterclaims. *See Gonzalez-Servin v. Ford Motor Co.*, 662 F.3d 931, 934 (7th Cir. 2011) ("When there is apparently dispositive precedent, an appellant may urge its overruling or distinguishing or reserve a challenge to it for a petition for certiorari but may not simply ignore it."). Nevertheless, we will not impose sanctions. *Dolin v. GlaxoSmithKline LLC*, 951 F.3d 882, 888 (7th Cir. 2020) (noting that, even when appeal is frivolous, court has discretion as to whether to impose sanctions under Rule 38). We instead caution Lin's attorney to carefully consider the district court's reasons for denying his client's motions and all relevant precedent from this court before filing an appeal in the future. Hartford Accident's motion for sanctions is denied. Lin's cross-motion for sanctions is also denied.

### III. Conclusion

For those reasons, we Affirm the district court's judgment.